Cause No. 25-40464

In the United States Court of Appeals

for the Fifth Circuit

Guillermo San Miguel Martinez, Individually and as Representative of the Estate of Guillermo San Miguel Sanchez; Maura Sanchez, Individually and as Representative of the Estate of Guillermo San Miguel Sanchez; Elsa M. Coronado; Magdalena Conde; Zenaida Sanchez; Cecilia Tusing; Mirta San Miguel; Alejandro San Miguel; Mauro San Miguel,

Plaintiffs - Appellants

v.

Hidalgo County; Brian Ayala, Individually and in his Capacity as a Sheriff's Deputy for Hidalgo County; Juan Flores, Individually and in his Capacity as a Sheriff's Deputy for Hidalgo County,

Defendants - Appellees

On Appeal from the United States District Court for
the Southern District of Texas, McAllen Division

Appellants' Reply Brief

Katie P. Klein
William D. Mount, Jr.
DALE & KLEIN, L.L.P.
1100 E. Jasmine, Ste. 202
McAllen, TX 78501

Counsel for Appellants

**Table of Contents**

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. The District Court Erred When it Granted Hidalgo County, . . . . . . . . . . . . 1
   Ayala, and Flores's Motion for Final Summary Judgment.

  A. Summary Judgment in Favor of Deputies Ayala and Flores . . . . . . . 1
    on Claims of Unlawful Entry of Home, Arrest, and Seizure
    Should Be Reversed.

    1. Lack of consent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    2. Lack of Probable Cause. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    3. Exigent Circumstances Did Not Independently . . . . . . . . . . . . 4
     Justify the Deputies' Entry into the Home.

    4. The Law Was Clearly Established. . . . . . . . . . . . . . . . . . . . . . 12

  B. Summary Judgment in Favor of Deputies Ayala and . . . . . . . . . . . 13
    Flores on Claim of Excessive Force Should Be Reversed.

  C. *Monell* Claim Should be Reinstated . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements . . . . . . . . . . . . . . . . . . . 20

## **Table of Authorities**

### **Cases**

*Barnes v. Felix,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  605 U.S. 73 (2025)

*Brigham City v. Stuart,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8
  547 U.S. 398  (2006)

*Gates v. Texas Dep't of Protective & Regul. Servs.,* . . . . . . . . . . . . . . . . . . . . . 12
  537 F.3d 404 (5th Cir. 2008)

*Groh v. Ramirez,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,9
  540 U.S. 551 (2004)

*Harris v. Serpas,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  745 F.3d 767 (5th Cir. 2014)

*Hatcher v. Bement,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  676 Fed. Appx. 238 (5th Cir. 2017)

*Hogan v. Cunningham,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  722 F.3d 725 (5th Cir. 2013)

*James v. Harris Cnty.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
  577 F.3d 612 (5th Cir. 2009)

*Kisela v. Hughes,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16
  584 U.S. 100 (2018) (per curiam)

*Kentucky v. King,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  563 U.S. 452 (2011)

*Lange v. California,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  579 U.S. 486 (2021)

*Linicomn v. Hill,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8
  902 F.3d 529 (5th Cir. 2018)

*Lytle v. Bexar Cty., Tex.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  560 F.3d 404 (5th Cir. 2009)

*Mace v. City of Palestine,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  333 F.3d 621 (5th Cir. 2003)

*Meadours v. Ermel,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15
  483 F.3d 417 (5th Cir. 2010)

*Mesa v. Prejean,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  543 F.3d 264 (5th Cir. 2008)

*Michigan v. Fisher,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  558 U.S. 45 (2009) (per curiam)

*Missouri v. McNeely,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  569 U.S. 141 (2013)

*Osborne v. Harris Cty., Tex.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  97 F. Supp. 3d 911 (S.D. Tex. 2015)

*Ramirez v. Knoulton,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17
  542 F.3d 124 (5th Cir. 2008)

*Reyes v. Bridgwater,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  362 Fed. Appx. 403 (5th Cir. 2010)

*Rice v. ReliaStar Life Ins. Co.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  770 F.3d 1122 (5th Cir. 2014)

*Riley v. California,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  573 U.S. 373 (2014)

iv

*Rockwell v. Brown*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  664 F.3d 985 (5th Cir. 2011)

*Sanchez v. Gomez*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  EP-17-CV-133-PRM, 2017 WL 3842137 (W.D. Tex. Sept. 1, 2017)

*Smith v. Lee*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  73 F.4th 376, 384 (5th Cir. 2023)

*United States v. Blake*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  888 F.2d 795 (11th Cir.1989)

*United States v. Capote–Capote*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  946 F.2d 1100 (5th Cir. 1991)

*United States v. Davis*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  290 F.3d 1239 (10th Cir. 2002)

*United States v. Gomez–Diaz*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  712 F.2d 949 (5th Cir. 1983), *cert. denied*, 464 U.S. 1051 (1984)

*United States v. Howard*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  106 F.3d 70 (5th Cir. 1997)

*United States v. Jones*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  239 F.3d 716 (5th Cir. 2001)

*United States v. MacDonald*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  916 F.2d 766 (2d Cir. 1990)

*United States v. Schmitz*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
  469 Fed. Appx. 772 (11th Cir. 2012)

*United States v. Thompson*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  700 F.2d 944 (5th Cir.)

*United States v. Troop*,. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  514 F.3d 405 (5th Cir. 2008*)*

*United States v. Williams*,. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
  36 F.4th 792 (8th Cir. 2022)

*Winkley v. Blackwell*, No. 24-60244, . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15
  2025 WL 1342001 (5th Cir. May 8, 2025)

**<u>Statutes</u>**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**<u>Constitution</u>**

U.S. CONST. amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8,12,16

**Argument**

I.    **The District Court Erred When it Granted Hidalgo County, Ayala, and Flores's Motion for Final Summary Judgment.**

    A.    **Summary Judgment in Favor of Deputies Ayala and Flores on Claims of Unlawful Entry of Home, Arrest, and Seizure Should Be Reversed.**

        1.    **Lack of Consent.**

Appellees assert that Guillermo's mother, Maura Sanchez, had common authority over the home, and therefore, could give consent to the Deputies to enter the home. Appellees' Brief, p.16. Appellants contested Appellees' assertion. ROA.745, 799, 910; Appellants' Brief, p.10-11. Whether there was common authority was a question of fact and the district court erred in deciding a fact question and in granting summary judgment that consent to enter the home was given. *United States v. Williams*, 36 F.4th 792, 796 (8th Cir. 2022) ("Common authority is determined from joint access, mutual use, and control, and its existence is a question of fact."); *United States v. Schmitz*, 469 Fed. Appx. 772, 772 (11th Cir. 2012) (whether consent to a search is voluntary is a question of fact).

Maura was not living in the home on the day that Guillermo was killed by the Deputies. ROA.800, 910; ROA.788 at 5:00. She had been in the home making

1

Guillermo breakfast. ROA.800. She did not have a key to the home which is a fact establishing that she did not have common control. ROA.745, 799. Maura's daughter had a key, but Maura did not have one. ROA.745, 797, 799.

Appellees admit that no actual consent was given by Maura Sanchez "[a]t the outset" as "Maura indicated that she wanted to wait for her daughter to arrive so the daughter could either open the door with a key or try to persuade Guillermo to open the door voluntarily." Appellees' Brief, p.18. The evidence reflects that her position never changed. Two eyewitnesses, Georgina Turrubiartes and Ana Cecilia Rangel, provided Affidavits averring that consent to enter the home was never given by Maura. ROA.796, 797, 798, 799.

Appellees claim that Maura Sanchez later gave consent. Appellees' Brief, p.18. In order to make such a finding, the district court was required to determine that there was no genuine issue of material fact that the consent was voluntary and not an acquiescence to a claim of lawful authority. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir.1989) ("[T]he government bears the burden of proving both (1) that consent existed and (2) that the consent was voluntary and not an acquiescence to a claim of lawful authority."). Appellees failed to establish both elements.

Appellees assert that actual consent was given by Maura after Guillermo

2

broke the window. Appellees' Brief, p.18. Appellees reference seven Spanish words, "abre la puerta" and "quiebre la puerta, oiga", uttered by a person at the scene without any context as establishing consent as a matter of law. *Id.* The district court's own interpreter, Monica Rossler, could not personally identify who uttered the aforementioned words or make out what was said before the words were uttered. ROA.981, 982, 983. Consent is determined based upon the totality of the circumstances, and not the basis of the utterance of seven Spanish words from an unknown voice. *United States v. Gomez–Diaz*, 712 F.2d 949 (5th Cir. 1983), *cert. denied*, 464 U.S. 1051 (1984) (Whether consent was given is a "determination to be made from the totality of the circumstances."). What was said by Maura and the others at the scene after the window was broken was not fully captured on the Deputies' two body-cameras. Irrespective of the previously identified Spanish words, Deputy Ayala made the decision to enter the home based upon the window being broken wherein speaking to his partner, Deputy Flores, Ayala said: "Let's kick the fucking door in and let's go." ROA.788 at 2:30 - 2:50.

In failing to consider the totality of the circumstances and disregarding Appellants' evidence that consent was not given to enter the home, the district court erred in granting summary judgment and finding that consent was given by Maura for the Deputies to enter the home.

3

### 2. Lack of Probable Cause.

Appellees claim there was probable cause to arrest Guillermo because there was a report from Maura Sanchez's friend that Guillermo punched Maura in the face. Appellees' Brief, p.20. Deputy Ayala's body-camera shows no visible injury to Maura's face. ROA.788 at 1:14-1:24. Further, there was no report of any physical pain. ROA.745. The 911 call was classified as a welfare check. ROA.531. If facts relevant to the probable cause determination are in dispute, the threshold fact questions must be settled before the Court can address the existence of probable cause. *See Mesa v. Prejean*, 543 F.3d 264, 272-73 (5th Cir. 2008).

### 3. Exigent Circumstances Did Not Independently Justify the Deputies' Entry into the Home.

Appellees apparently recognizing that Deputies Ayala and Flores lacked consent to enter the home request this Court to affirm dismissal on an alternate basis, exigent circumstances. Appellees' Brief, p.23.

"It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559, (2004)). A recognized exception to the warrant requirement is "the existence of exigent circumstances justifying immediate action." *Linicomn v. Hill*, 902 F.3d

529, 536 (5th Cir. 2018) (citing *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130-31 (5th Cir. 2014)). The exigent circumstances exception applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable." *Lange v. California*, 579 U.S. 486 (2021) (alteration in original) (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011)). The exception enables law enforcement officers to handle emergencies and situations presenting a "compelling need for official action and no time to secure a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013) (citation omitted); *see also Riley v. California*, 573 U.S. 373, 402 (2014). Exigent circumstances generally exist when there are "immediate safety risks to officers and others[.]" *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001).

Exigent circumstances did not even factor into the equation to arrest Guillermo. Deputy Ayala in response to the question of "[W]hat was the necessity to enter the home when he's the only one in the home and the door is locked?" was: "To effect an arrest. At that time, nobody else was there, or nobody else would have been placed in danger, and that's why the decision was made to go in." ROA.493. Deputy Ayala earlier testified that he had made the decision to arrest Guillermo when he had interviewed the mother and she "had stated that she had been assaulted and she had visible injuries." ROA.400. In his written

statement, Deputy Ayala stated: "Because of what Guillermo did to his mother, and the injuries she clearly sustained, he committed the offense of 'assault family violence,'" and to stop him from causing more damage to her home, I made the decision to enter the house to effect an arrest." ROA.531. The foregoing reasons are not exigent circumstances. Deputy Ayala testified that had Guillermo been successfully arrested, the charge would have been simple assault which is a class A misdemeanor.[1] ROA.515. Guillermo was killed over a class A misdemeanor.

Deputies Ayala and Flores both testified that they were told before they entered the home by Guillermo's mother, Maura Sanchez, that Guillermo had no weapons. ROA.494, 594. Deputy Ayala also testified that at the time he entered the home that Guillermo would not have any weapons because of the statement made by Guillermo 's mother that Guillermo had no weapons. ROA.413, 414. Therefore, the idea that Guillermo broke a window to a create a shooting lane as suggested by Deputy Ayala in his deposition testimony but not in his written statement given shortly after the subject incident was shear speculation and utterly implausible. It is further implausible given the window broken was not a window in the front of the home but Guillermo's bedroom window which was in the back

---

[1] Deputy Flores testified that Guillermo never attempted to evade arrest and that Guillermo did not actively resist arrest. ROA.662, 663.

6

of house and any supposed shooting lane created lacked access to the front street and neighbors. ROA.403, 407. On observation that the window was being broken, Deputy Ayala nowhere observed that Guillermo was attempting to harm himself, was in immediate danger, or armed with a weapon. ROA.745.

Deputy Flores stated that it was Deputy Ayala's decision to enter the home. ROA.566, 567. Therefore, his decision to enter the home could not have been made upon a determination of exigent circumstances and probable cause. He was simply following Deputy Ayala's lead.

This Court has identified some factors to examine when considering exigent circumstances. To determine if exigent circumstances exist, some factors a court examines include: (1) the degree of urgency involved and amount of time necessary to obtain a warrant; (2) a reasonable belief that contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the contraband's possessors know police are on their trail; and (5) the ready destructibility of the contraband. *See United States v. Thompson*, 700 F.2d 944, 948 (5th Cir.), affirmed on appeal after remand, 720 F.2d 385 (5th Cir.1983) (listing facts that may be relevant to finding of existence of exigent circumstances) (citation omitted); *see also United States v. Capote–Capote*, 946 F.2d 1100, 1103

(5th Cir. 1991) (listing frequently cited examples of exigent circumstances that may justify warrantless entry) (citation omitted). Deputies Ayala and Flores failed to establish any degree of urgency and or that key evidence of a crime was being destroyed. ROA.617.

"The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action." *Id.* (citing *United States v. MacDonald*, 916 F.2d 766, 770 (2d Cir. 1990)). The exigent circumstances exception doesn't depend on an officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam). Instead, the test hinges on the objective reasonableness in view of all the circumstances: "Whether exigent circumstances exist to justify a warrantless search depends on whether, given the totality of the circumstances, the search was objectively reasonable." *Linicomn*, 902 F.3d at 536 (citing *Stuart*, 547 U.S. at 404). This Court has instructed that "[r]easonableness under the Fourth Amendment should frequently remain a question for the jury." *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 411 (5th Cir. 2009) (internal quotations omitted); *United States v. Howard*, 106 F.3d 70, 73 (5th Cir. 1997) (existence of exigent circumstances is a question of fact). There is no competent evidence that

8

aid needed to be rendered[2] or that there was an urgent need to take action. Guillermo was not in need of aid or medical care. There was no evidence that he had a weapon. There was no evidence that he would harm himself. He was in his bedroom listening to music and seated at his desk. The front door to the home was locked and his bedroom door was shut. Guillermo was not going anywhere. A broken bedroom window on private property is not indicative of a danger to public safety.

Deputy Ayala was "plainly incompetent." He testified that he could have entered the home and effected the arrest without receiving any type of permission to enter the home. ROA.401. He testified: "Again, going back is, you know, just receiving the information and the statement that he received and then seeing the visible injuries were - - you know, which gave us probable cause that an assault did occur, then yes, we could have entered and effected an arrest." *Id.* at 49. His testimony simply contravenes Supreme Court and Fifth Circuit precedent that entry of a home without a warrant is presumptively unreasonable. *Groh*, 540 U.S. at 559.

Various cases and the facts herein that there was no evidence of serious

---

[2]"One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Stuart*, 547 U.S. at 403.

injury or an imminent threat of serious injury establish that a reasonable officer could not have concluded exigent circumstances were present based on the established law. *United States v. Troop*, 514 F.3d 405, 408 (5th Cir. 2008) (no exigent circumstances where officers tracked a group of illegal aliens who had been walking on foot in high heat to a house and entered the house attempting to administer aid); *United States v. Davis*, 290 F.3d 1239, 1240-41 (10th Cir. 2002) (no exigent circumstances where police arrived to a home on a report of a domestic disturbance, spoke with a drunk man who claimed his girlfriend was not present; the girlfriend then appeared and claimed they had been arguing and resisted her boyfriend's attempts to close the door on police, who then entered the home); *Osborne v. Harris Cty., Tex.*, 97 F. Supp. 3d 911, 928, 930 (S.D. Tex. 2015) (In denying summary judgment based on qualified immunity, the court held that "[t]he case law shows that at the time of the search, the right to be free from a warrantless forced entry . . . , absent exigent circumstances, was clearly established." In concluding exigent circumstances were not present, the Court held that even though the officers were attempting to protect a potential victim of violence, the officers "had no particularized knowledge about [plaintiff], his apartment unit, or any alleged victim that could support" a conclusion that an occupant was "seriously injured or imminently threatened with such injury.")

10

*Sanchez v. Gomez*, EP-17-CV-133-PRM, 2017 WL 3842137, at \*8 (W.D. Tex. Sept. 1, 2017) (denying qualified immunity as "no reasonable officer could infer from the circumstances, that any officer or member of the house was in imminent danger.").

Appellees cite the *Rockwell* case, but that case is distinguishable as the holding in that case was that "it was not clearly established that it was unreasonable for the officers to believe that the threat Scott posed to himself constituted an exigent circumstance" and therefore "the officers are entitled to qualified immunity on the Rockwells' claim for warrantless entry." Appellees' Brief, p.23; *Rockwell v. Brown*, 664 F.3d 985, 996 (5th Cir. 2011). Deputies Ayala and Flores never presented any evidence that Guillermo was an immediate danger to himself. ROA.777.

In examining the evidence and inferences drawn therefrom in the light most favorable to Appellants, exigent circumstances are not present. Guillermo's mother stated that he had no weapons, Deputy Ayala observed no weapons on Guillermo when he broke the window, Guillermo was alone in the home, and there was no evidence that Guillermo was an immediate danger to himself or others.

Because a jury could find that the warrantless search and seizure here was not justified by exigent circumstances, Appellants have asserted a constitutional

11

violation of Guillermo's Fourth Amendment right to be free from unreasonable searches and seizures.

Every reasonable law enforcement officer would have understood that what he was doing violated the Fourth Amendment. *Hogan v. Cunningham*, 722 F.3d 725 (5th Cir. 2013) ("At the time of the Officers' conduct, the Supreme Court and this court had made it abundantly clear that either a warrant or probable cause and exigent circumstances is required to arrest an individual in his home.").

### 4.    The Law Was Clearly Established.

Appellees argue that Guillermo's constitutional rights were not clearly established at the time of his death in 2021. Appellees' Brief, p.26-28. Appellees are incorrect. Under the Fourth Amendment, a warrantless intrusion into a person's home is "presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify" the intrusion. *Gates v. Texas Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 420, 424 (5th Cir. 2008). ("[T]he law regarding consent and exigent circumstances has been clearly established for some time."); *Smith v. Lee*, 73 F.4th 376, 384 (5th Cir. 2023) ("Smith's right to not have her home searched without a warrant, consent, or other legal justification was clearly established in 2018.").

**B.    Summary Judgment in Favor of Deputies Ayala and Flores on Claim of Excessive Force Should Be Reversed.**

Appellees assert that the inquiry as to whether the officers had probable cause to believe the suspect posed a threat of serious physical harm to the officers or others "must account for all relevant circumstances leading up to the shooting, not a single freeze-frame selected in hindsight." Appellees' Brief, p.29. Despite the foregoing assertion, Appellees' Motion for Final Summary Judgment was based upon a single freeze frame selected in hindsight that was imbedded in their Motion. ROA.337, 682.

About a minute and half before the Deputies shot Guillermo, Deputy Ayala tells Deputy Flores that if Guillermo starts coming after us we are going to have to do what we are going to have to do to which Deputy Flores acknowledges that we have no choice. ROA.788 at 5:29. They had made the decision that if he came out of the room, they were going to shoot him. *Id.* Ten seconds before Guillermo is shot, Deputy Flores encourages Guillermo to exit his bedroom and says that all they want to do is talk to him. *Id.* at 658. Guillermo exits the bedroom with the knife in his left hand pointed towards the floor and not making any threatening movements or gestures and is shot eleven times. *Id.* at 7:10. No warning was

issued as he was exiting the bedroom to drop the knife.[3] *Id.*  Guillermo never

verbally threatened the Deputies, but asked them to get out of his house. *Id.* at

5:00. He was shot while following the Deputies' earlier commands to come out of

the bedroom. Both Sheriff's Deputies were standing at a safe distance from

Guillermo wearing body armor or bullet proof vests. ROA.429, 603. The Deputies

were aware that Guillermo was mentally ill. ROA.492, 776.

In *Meadours v. Ermel*, this Court refused to grant summary judgment to an

officer asserting qualified immunity because it was material whether the

six-foot-two-inch, 203 pound suspect—who was armed with a

ten-and-three-quarter-inch screwdriver, experiencing "a mental episode," and

refusing to comply with orders to drop the screwdriver —was charging toward an

officer or standing "still atop [a] doghouse, posing no imminent threat" when shot.

*Meadours v. Ermel*, 483 F.3d 417, 423-24 (5th Cir. 2010).

In *Winkley v. Blackwell*, this Court concluded that the fact issues identified

by the district court were material to Winkley's Fourth Amendment claim and "we

lack jurisdiction to consider anything more. *Winkley v. Blackwell*, No. 24-60244,

2025 WL 1342001, at *7 (5th Cir. May 8, 2025). Blackwell was standing eight

---

[3]Deputy Flores falsely statement to the Sheriff's Department that "Guillermo ignored all of our commands to stop and drop the knife as he moved forward in our direction with the knife." ROA.778.

14

feet away from Winkley who had a t-post in hand when he pulled the trigger. *Id.* at *2. "[A] reasonable jury could determine that he was beyond the range of endangerment from the T-post at that moment[.]" *Id.* at *9.

Appellants are not alleging violation of an extremely abstract right. *See Hatcher v. Bement*, 676 Fed. Appx. 238, 245 (5th Cir. 2017). Assuming the facts in the light most favorable to Appellants, Guillermo posed no greater threat than the suspect in *Meadours* or Winkley in the *Winkley* case. This Court rejected the officer's claim of qualified immunity because there was a genuine, material dispute regarding whether the suspect nevertheless posed a threat at the time of the shooting. *Meadours*, 483 Fed. Appx. at 423; *Winkley*, 2025 WL 1342001, at *7. Similar material factual disputes exist here. Guillermo's constitutional right was clearly established by the precedential decision published in *Meadours* 11 years before the events underlying this case.

Appellees argue that *Kisela v. Hughes* is analogous to this case and contend "that the threat facing the officer there was materially less acute than the threat facing the deputies here." Appellees' Brief, p.37; *Kisela v. Hughes*, 584 U.S. 100 (2018) (per curiam). Appellees misapply *Kisela* as the case was not decided based upon the seriousness of the threat. The Supreme Court explained that the officer was entitled to qualified immunity because the case was "far from an obvious case

in which any competent officer would have known that shooting [the woman with the knife] to protect [the second woman] would violate the Fourth Amendment," and "the most analogous Circuit precedent favor[ed] [the officer]." *Kisela*, 584 U.S. at 105-106. Therefore, the Court concluded that the constitutional right was not clearly established and reversed the Ninth Circuit's decision denying qualified immunity. *Id.* at 108.

Appellees also cite *Harris v. Serpas* as similar. Appellees' Brief, p.37; *Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014). *Barnes v. Felix* abrogated *Harris v. Serpas*, holding that the "moment-of-threat" rule conflicts with inquiry into totality of the circumstances for assessing reasonableness of use of force. *Barnes v. Felix*, 605 U.S. 73, 83-84. (2025). "[T]he taser video evidence confirms that Mr. Harris was holding a knife above his head at the moment Officer McGee fired his weapon." *Harris*, 745 F.3d at 773. Guillermo was not holding the knife in a threatening manner at the time he was shot nor was he within distance of the Deputies to do harm.

Appellees cite *Ramirez v. Knoulton* as "confirm[ing] the absence of clearly established law in Appellants' favor." Appellees' Brief, p.37; *Ramirez v. Knoulton*, 542 F.3d 124 (5th Cir. 2008). This Court held that "Knoulton's decision to use deadly force was therefore not objectively unreasonable" as Ramirez stood

armed with a handgun several yards away, "brought his hands together in what we believe could reasonably be interpreted as a threatening gesture, as if to grip the handgun with both hands in preparation to aim it at the officers", was defiant, potentially suicidal, and "Knowlton reasonably feared for his life and the lives of his fellow officers." *Id.* at 131. *Ramirez* is distinguishable. Guillermo made no threatening gestures, Guillermo was carrying a knife, and not armed with a gun. "The immediacy of the risk presented by a man armed with a kitchen knife at his side is far less than that of a man armed with a gun[.]" *Reyes v. Bridgwater*, 362 Fed. Appx. 403, 407 (5th Cir. 2010). Risk of death or serious harm was not imminent. Guillermo could not have stabbed either Deputy from where he stood at the time he was shot and he had not raised the knife. He was eight to ten feet away from each Deputy. In addition, each Deputy was wearing body armor.

Finally, Appellees cite *Mace v. City of Palestine. Mace v. City of Palestine*, 333 F.3d 621 (5th Cir. 2003). Appellants have previously distinguished *Mace v. City of Palestine*. Appellants' Brief, p.38-39.

### C.    *Monell* Claim Should Be Reinstated.

"To hold a municipality liable under [42 U.S.C.] § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving

force behind, or actual cause of, the constitutional injury." *James v. Harris Cnty*., 577 F.3d 612, 617 (5th Cir. 2009). Because Appellants have shown that Guillermo suffered a deprivation of his constitutional rights at the hands of Deputies Ayala and Flores, Hidalgo County was not entitled to summary judgment on Appellants' municipal liability claim and summary judgment granted in favor of Hidalgo County should be reversed and remanded for a jury trial.

## Conclusion

**WHEREFORE, PREMISES CONSIDERED**, Appellants respectfully requests that this Court reverse the Order granting Defendants' Motion for Final Summary Judgment and the Final Judgment, and remand for further proceedings. Appellants request such other and further relief which they may be justly entitled.

Respectfully submitted,

DALE & KLEIN, L.L.P.
1100 E. Jasmine, Ste. 202
McAllen, Texas 78501
Telephone No. 956.687.8700
Facsimile No. 956.687.2416
office@daleklein.com

*/s/ Katie P. Klein*
KATIE P. KLEIN
State Bar No. 11561900
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
**Attorneys for Appellants**

18

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been served on all counsel of record on May 18, 2026, by electronic delivery and/or facsimile:

Preston Edward Henrichson
HENRICHSON LAW PLLC
10113 North 10th Street, Ste. E. South
McAllen, TX 78504
preston@henrichsonlaw.com

Michael A. McGurk
WALSH MCGURK CORDOVA NIXON, PLLC
1506 S. Lone Star Way, Ste. 10
Edinburg, TX 78539
mmcgurk@wmcnlaw.com

Marissa Carranza Hernandez
MARISSA ANNA CARRANZA HERNANDEZ, ATTORNEY AT LAW, PLLC
104 West Polk Avenue
Pharr, TX 78577
marissa@machattorney.com

*/s/ Katie P. Klein*
KATIE P. KLEIN

## **Certificate of Compliance**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,045 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect in Times New Roman font size 14.

 /s/ *Katie P. Klein*
KATIE P. KLEIN